**RECEIVED**
7/31/23
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS** FOR

THE SIXTH CIRCUIT

EAST FIFTH STREET, ROOM 540

POTTER STEWART U.S. COURTHOUSE

CINCINNATI, OHIO 45202-3988


**Kimberly Grech**

**Pro Se Disabled**

**Domestic Violence Survivor**

    Appellant,

_____/

                                     **Re: Case No. 23-1080**,

                                           Orig Case No. 5:08-cv-10729 /

                                           Appeals: 10-2020 / 09-2309

          v

Ford Motor Company

      Agent of Legal Service:

      Ms. Lori Costew

Appellee

_____/


### _APPELLANT'S OBJECTIONS TO COURT ORDER DKT 22 JULY 19, 2023,_

### _AND_

### _APPELLANT MOVES FOR IMMEDIATE ADA ACCOMMODTIONS OF TELEPHONIC HEARING AND RESOLUTION ON 3-COUNT EMERGENCY MOTION OF APRIL 20, 2023_

### _AND_

### _HOLD APPEAL CASE IN ABEYANCE UNTIL TELEPHONIC HEARING IS HELD AND 3-COUNTS EMERGENCY MOTION AND INJUNCTIVE RELIEF IS RULING AND RESTRAINING ORDER_

Now comes Kimberly Grech, Appellant, a Pro Se Disabled Domestic Violence Survivor and Ford Motor Company Salaried Manager Retiree who has brought this Case to the Court of Appeals since 2009 and has been denied Civil, Constitutional, Disability, ERISA, ADA, FMLA, FLSA, Ethics, Due Process, Equal Protections, Emmployment, Healthcare, Domestic Violence, Privacy and Security and all fair and legal procedings with the EdMi, Sixth Circuit Court of Appeals, State of Michigan, Region5, the last three Michigan Governors, last three Michigan Attorneys General, all Michigan State and Federal Representatives, who are sworn and required to enforce and protect vulnerable groups of residents and citizens, uphold their oaths of office, refrain from bias, conflicts of interest, corruption and discrimination, harassment and reprisal. This did not happen, the EdMi Federal Court, Sixth Circuit Court of Appeal, State Bar of Michigan, Michigan and Federal, Executive Branch, Legisltative Branch, Judicial Branch has attacked, harassed, retaliated and in this Case and Court Orderr Dkt 22, purposely refused to addresse the severe and continual conflicts of interest, corruption, stalking, serveying and harassment by Ford Motor Company, the law firm of Kienbaum Hardy Viviano Pelton Forrest, WellPoint Unicare, State Bar of Michigan and Michigan Executive Branch, Judicial Branch, Legislative, and Region5. This groups misuse and abuse of power to harass and retaliate against employees, disabled litigants or domestic violence survivors that would file Attorney Grieivances, Ethics Complaints, EEOC and Michigan Department of Civil Rights Complaints, WhistleBlower Complaints, Workers Compensation Violations and Corruption evidence and provide details of court docket tampering, transcript manipulation and name removal and replacement, write complaints to the appropriate organizations about corruptions and misuse and abuse power that leads to the devestration and, in some cases purposeful targeting by these appointed or elected officials, state and federal agents and officers, attorneys and their employees, to harm their opponents..

 Since 2006, these conflicts of interest, ethics violations and coruption remain unaddressed and used by those placed into power by Michigan's Executive Branch. These violation Michigan and Federal Laws, Ethics and Conflicts of Interest.

The Sixth Circuit Court of Appeals has refused to address Appellant's ADA Emergency Motion and Telephonic Hearing filing and has Ordered the Third Show Cause Order as Moot. A filing

they forced upon a Pro Se Disabled Domestic Viilence Survivor who has suffered for over 20 years at the hand of these same perpetrators and properly reported to Police, the State Bar of Michigan, Michigan Supreme Court, Michigan Attorney Grievance Commission, Michigan Department of Civil Rights, Michigan's Board of Ethics, The Institute of Continual Legal Education, The Federal Bar, The American Bar, The Michigan State Bar, The Michigan Civil Rights Commission, The U.S. EEOC on a State, Regional and National Level. Every State and Federal House of Representative and Senator. Every State Attorney Greivance Commision Board or Board to address Attorney Disciplines and Grivances within the Nation. Michigan, Regional and National Health and Human Services for Disability Rights, ADA, Social Security Administration, U.S. Department of Lbaor, Pension Benefit Guarentee Corporation, Domestic Violence Survivor Agency and Protections, Michigan Board of Ethics, Michigan LEO, State and Federal WhistleBlower Complaints and last three U.S. Attorneys General and last three U.S. Presidents of the United States and a Notice to the U.S. Attorney General in this Case Filing.

The Court of Appeals disregarded Appeallant's Emergency Motion for ADA Accommodations for Telephonic Hearing and 3-Count Emergency Motion, continued to write cryptic docketing and reasonsing for the "Show Cause" and hide from the docket the attorney switch made law firm's removal of attorney Shannon Loverich, Kienbaum Hardy Viviano Pelton Forrest. This attorney change is the electronic default attorney of record to enable the attorney to recieve notifications, not allow opposing parties to know who the opposing counsel of record is. In other words, KHVPF tried to change attorneys notifications and continue on without ever filing appearrnaces in the Case, as they had since it began in February 21, 2008.

On Februray 6, 2023, was the first time the lawfirm of Kienbaum Hardy Viviano Pelton Forrest filed an appearance for Ford Motor Company, Dkt 5, Dkt 6. But this law firm filed documents in this Case and for Ford Motor Company regarding this legal matter dating back to 2006. In fact, Ford Motor Cmopany unlawfully and in violation of employee rights, forced Appellant to meet with attorney while refusing her to bring legal counsel. Ford Motor Company knew Ms. Greh was disabled and a domestic violence survivor who suffered from PTSD. Ford Motor Company and the law firm of KHVPF, continued to harass, threaten, misuse and abuse their positions of power and along with Ford Motor Company, WellPoint Unicare and their representatives, traumatized Ms. Grech, while they continued altering, maniuplating and unlawfully changing her

employement, pension and retirement, lie and accidental death and disability adn optional life
and accident insurance plans, group healthcare solely to force her from work.

 The Court of Appeals has required Appellant meet a great demand by filing a response to a
"SHOW CAUSE", then merely ignored the content of that response.

over the last twenty years Appellant has suffered at the hands of the Appellee and their legal
team, the favors, bias, conflcits of interest and unethcial conduct that has occured and continus to
occur in this Case and during this "Show Cause" itself.

The Facts of this Case will never change, Appellant began her career at Ford Motor Company in
January 1991. She never worked any place else but at Ford Motor Company and for Ford Motor
Company as a Salaried employee. Appellant is a domestic violence survivor and her name was
not "Grech" until the end of her career. Due to her status as a domestic violence survivor, Ford
Motor Company claimed they would enact protections to hide her employment record from her
ex-spouse and keep her identiy hide at the Corporation. Ms. Grech was an approved
Telecommuter and had an approved agreement signed by senior managment for her position in
Product Engineering Data Mining Manager. Appellant was diagnosed with a perment and
progressive disabiity, Ford and their attorneys targeted Appellant for termination and
maniupluted and made backdated changed to her employment record. These records impacted
Appellants's Pension, Retirement, Healthcare, Dental, Life and Accidental Death and Disability,
Optional Life and Accident, Credit Report and Finances, United Way and Total Compensation,
Fringe Benefits, and every aspect of Appellant's Life. Ford then had a male co-worker harass Ms.
Grech and then ultimately forced Ms. Grech off on a No work Avaible Medical Leave. A pattern
they have used in violation of the ADA, FMLA, ERISA, FLSA and Ethics, Conflicts of Interest
and as outlined in this Case and numerous others. Michig Board of Ethics, Complaint:
Document: Attached: MichiganBoardOfEthicsComplaintFP1

Ford Motor Company then used the conflicted law firm of Kienbaum Viviano Hardy Pelton
Forrest to call the chamber of Judge John Corbett O'Meara and asked if he would take the Case.
The Law Firm KHVPF, Judge O'Meara, Ford Motor Company and violations of FRCP's cause a
Manifestion of Due Process, Equal Protections, Curruption, Conflicts of Interest and in
combination with their other outined and reported actions, outline the severe and abuse of power
that occured in this Case and actions taken by the EdMi, State Bar of Michign and Attorney

Grievance Commission, Judge O'Meara, Magistrate Hluchaniuk, Sixth Circuit Court of Appeals and their refusal to investigate the Judicial Complaints and post the Complaints filed against both Judges, docket tampering and purposeful misaligning of Dockets with Evidence supplied for those fiings. Transcript tampering and the removal of Ford Motor Company attorney "Jennifer Zinn" and "Unicare", that was replaced with "Lynn" and "Medicare".

These issues, breaches, violations, harassment, reprisals and the abuse of power and unethical conduct is open and before the Sixth Circuit Court of Appeals. The Appellee's refused to Defend this Case on every stage and when the Sixth Circuit Court of Appeal approached them recently with the offer to Mediate they refused once again after spending more than twenty years with the knowlege Ms. Grech is a domestic violence survivor and Ford Motor C ompany Salaried Management Retiree. Ford Motor Company has conintually misused and abused favors, bais and privilges given to them and their attorneys by the State of Michigan and Federal Government and has used and harmed idnividuals with disabililies and has violated the rights of employees, especially women.

Appeallant properly filed Attorney Greivances reporting attorney violations Ms. Shanoon Loverich, Ms. Elizabeth Hardy, Mr. Frank Cusmano, Ms. Jennifer Zinn, Ms. Gail Cober, Mr. Daniel Levy, and others. The Grievances properly outlined the events, abuse and conflicts of interest by these individuals to push for ADR and attempts their attempts to coerce, threaten and misuse their positions to enforce their own will, not the law. This abuse was ignored by State and Federal Officials and met with hostility, retaliation and  further actons of punative actions and defamation including preventing the Appellant from receiving proper medical care. Threats and schemes against individuals with disabiities and vioaltions of their Oath of Office, Code of Ethics, Michigan and U.S. Constitution and Disabilit Rights and Medical Rights Laws. Harassment and Retalation among other violations of privacy, threats, coersion and stalking. Attachments:

Formal Ethics Complaints and in this Court Case: 08-10729, 09-2369 and 10-2020 and 23-1080.


WJEREFORE, Appeallnt, Ms. Kimberly Grech, Respectfully Submits this Objection and in Support of, "*Appellant's ADA Telephonic Hearing ADA 3-Count Emergency Motion and*

*injunctive Relief.* , Court ORDER 22  -  BEING "MOOT" AS TO  APPELLEE'S CONFLICTS OF INTEREST AND ABUSE OF POWER, FAILURE TO DEFEND THIS CASE); AND RESPECTFULLY MOVES TO PLACE THIS APPEAL BACK INTO ABEYANCE PENDING RULING ON, "***APRIL 20, 2023 APPELLANT'S TELEPHONIC HEARING AND 3-COUNT EMERGENCY MOTION AND INJUNCTIVE RELIEF***" and Awarding Appellant all relief and benefits sought in filing and Protection Order.

Respectfully, Submitted, July 27, 2023

Kimberly Grech

**LEGAL AUTHORITY**

**Scheme Under ERISA**

ERISA is a comprehensive statutory scheme for "the federal regulation of private employees benefit plans, including both pension plans and welfare plans." Dis. Of Columbia v. Greater Washing Bd. Of Trade, 506 U.S. 125, 126 (1992). ERISA preemption is not limited to state law claims that solely require the

29 U.S.C 502(a)(1)(B)

Miller v/ Metropolitan Life Ins. Co., 925, F.2d 979, 986 (6th Cir. 1991) ("[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commence suit.")

Constantino v. TRW, Inc. 13 F.3d 969, 975 (6th Cir. 1994).

**FRCP 37(f)** Failure to participate in a Framing Discovery Plan – If a party or its attorney fails to participate in a good faith developing and submitting a proposed discovery plan as required by Rule 26(f) the Court may after giving the opportunity to be heard, require the party or attorney to pay to another party the reasonable expenses including attorney fees caused by the failure.

50(a)

**28 U.S.C**. § 2107 (a) permits a district court to extend the time for appeal, but it does not limit the length of the extension. In contrast, Fed. R. App. P. 4 (a) limits the length of any extension to 30 days. So what happens if a district court extends a litigant's time to appeal for more than 30 days, except

EXHIBIT A – PAGE-1 – May 11, 2007, Unicare Letter on LTD benefits payments

UNiCARE
Dearborn Service Center
Disability Benefits Department

3200 Greenfield
Dearborn, MI 48120
Tel: (800) 572-1581
Fax: (313) 594-5173


UNICARE.

May 11, 2007

Kimberly D. Grech

RE:    Location: 8200
       Claim #:  350612

Dear Kimberly D. Grech:

According to the disability benefits plan applicable to you, your Short Term Disability (STD) benefits will be reduced by the amount of any Social Security Disability Insurance Benefits (SSDIB) you are eligible to receive under the federal Social Security Act for the same period of time as your disability claim.

SSDIB may be payable if you have been disabled for at least five (5) months and your disability is expected to continue for a year from the date disability began.  In addition to the benefits offered by the Social Security Administration to disabled workers, benefits also may be payable for certain eligible dependents.

Our records show that your have been disabled for sixteen (16) weeks.  If you remain disabled and unable to work longer than five (5) months from your date of disability, you are required to apply for SSDIB.

- You must apply for Social Security Benefits prior to the first day of the sixth month from the date of Disability and furnish UNICARE with evidence of that application to postpone the presumed SSDIB amount until you are eligible for Extended Disability Benefits.

- If you remain disabled and do not apply for SSDIB prior to the first day of the sixth month from the date of Disability, your benefits will be reduced effective the first day of the 6th month.  Your benefits will be reduced by the amount of SSDIB for which you are presumed to be eligible.

- The presumption will be taken immediately if proof of denial of SSDIB is not furnished to UniCare by the first of the thirteenth month of Disability.

16 week sal-mda.doc

page 1

EXHIBIT A – PAGE-2 – May 11, 2007, Unicare Letter on LTD benefits payments

If you have applied for SSDIB, notify UNICARE as soon as you receive an award or denial from the Social Security Administration. UNICARE will recalculate your disability benefits based on your SSDIB award. If an overpayment results from an SSDIB award, you are responsible for repaying UNICARE for the benefits that cover the time you have been receiving disability benefits. If an overpayment is not refunded, future disability benefits will be withheld until the overpayment is repaid. If UNICARE has withheld disability benefits pending a decision from Social Security and you are denied SSDIB, UNICARE will repay those benefits to you.

It is in your best interest to contact the Social Security District Office to learn more about Social Security and make application for SSDIB. The address of the nearest Social Security Office may be obtained from the post office, the telephone directory under "Social Security Administration", or online at www.ssa.gov.

Sincerely,
V Stevenson
UniCare
Disability Benefits Department

Enclosure:    Special Attachment Regarding Disability Retirement Benefits

CLAIMS PROCESSING SERVICES BY UNICARE

EXHIBIT A – PAGE-3 – May 11, 2007, Unicare Letter on LTD benefits payments

 SPECIAL ATTACHMENT

# SPECIAL ATTACHMENT REGARDING DISABILITY RETIREMENT BENEFITS

## APPLICATION REQUIREMENTS

If you have ten or more years of credited service under the Retirement Plan and your disability lasts more than five months, you may be eligible for disability retirement benefits.

Under the Long Term Disability (LTD) Benefits program, you are required to apply for disability retirement benefits. A decision regarding your application must be submitted to UniCare before the first of the 13th month of your disability period to avoid a reduction of your disability benefits. Your LTD Benefits will be reduced as of the first of the 13th month of your disability if UniCare does not receive a decision regarding your application for disability retirement benefits.

## OTHER CONSIDERATIONS

It is also to your advantage to apply for disability retirement benefits if one of the following conditions exists:

- Your benefit from the retirement plan will exceed the amount of disability benefits you are receiving from UniCare; or

- Your illness is life threatening. Survivor's benefits offer protection for your spouse. These benefits may be greater if you are retired at the time of your death. You must be married one year or longer to be eligible for the increased survivor benefits.

For information on your eligibility for retirement benefits, contact the National Employee Service Center (NESC).

Remember, you are eligible to apply for reinstatement from a disability retirement if your condition improves enough for you to return                         to                         work.

**EXHIBIT B**



4.FD-B-8E ENV# FD12022001001000001

KIMBERLY D GRECH



**Fidelity Service Center for**
**Ford Motor Company**
1-800-544-3333
**TDD Service for the Hearing Impaired**
1-800-655-0969

April 25, 2008

Plan Name:     Ford General Retirement Plan (GRP)

RE:            Pension Benefit Approval
               Confirmation Number:      0811610330625

## DEAR MS. GRECH:

The General Retirement Plan Committee has approved your Disability retirement application effective February 1, 2008. Details regarding your retirement benefit are included with this statement.

This pension benefit approval shows the payment method you selected and the amount of your pension benefit as calculated using your final earnings and service. Your total monthly pension benefit is ▮▮▮▮

Please notify us if any of the following condition(s) pertain to you:

- You enroll in Medicare Part B.
- You are awarded a Social Security Disability Benefit.
- If at any time you are engaged in gainful employment or occupation for remuneration or profit.

**Payment Information:** Your first monthly pension benefit payment will be sent within 30 days.

**Taxes:** Your monthly pension benefit will have federal and state taxes (if applicable) withheld according to your election. Even if you elect not to have any taxes withheld, you are liable for payment of federal and state taxes on the taxable portion of your pension benefit. You may also be subject to tax penalties under the estimated tax payment rules if your payment of estimated tax and withholding, if any, is not adequate.

Each January you will be sent an IRS Form 1099-R summarizing pension benefit payments for the prior year and any taxes withheld. You should use this information when you file your income tax return. If you wish to change your tax withholding in the future, contact Comerica Bank at 1-800-647-3674.

**Income Taxes:** Your monthly pension benefit will have federal and state taxes (if applicable) withheld according to your election. Even if you elect not to have any taxes withheld, you are liable for payment of federal and state taxes on the taxable portion of your pension benefit. You may also be subject to tax penalties under the estimated tax payment rules if your payment of estimated tax and withholding, if any, is not adequate. Each January you will be sent an IRS Form 1099-R summarizing your GRP pension benefit payments for the prior year and any taxes withheld. You should use this information when you file your income tax return.

**EXHIBIT C**

*Ford Motor Company* **General Retirement Plan –**
**Change of Designation of Beneficiaries**

Employee's Name
Kimberly Case

Employee's Social Security Number

In accordance with the provisions of the Plan, I hereby revoke all designations of beneficiaries heretofore filed by me and I hereby designate as my beneficiary the person or persons named below to receive upon my death any contributions with accumulated interest remaining in my account under the Plan. I understand that contingent beneficiaries will receive these monies only if there is no living primary beneficiary at my death. I reserve the power to revoke or change this designation in whole or in part subject to the requirement that my spouse, if any consent to any designation of a primary beneficiary other than my spouse.

| NAME OF BENEFICIARY | RELATIONSHIP | BIRTHDATE | |
|---|---|---|---|
| 1. Kimberly | friend | 70 | Primary ☒ |
| 2. Brenda | sister | 04 | Primary ☐ / Contingent ☒ |
| 3. Nicole | neice | 86 | Primary ☐ / Contingent ☒ |
| 4. | | | Primary ☐ / Contingent ☐ |

Up to four beneficiary designations will be accepted. This limitation may be exceeded if immediate family members (i.e. spouse and children) are being designated beneficiaries.

| | | | |
|---|---|---|---|
| 5. | | | Primary ☐ / Contingent ☐ |
| 6. | | | Primary ☐ / Contingent ☐ |

Member Signature _Kimberly D. Case_     Date 5/6/03     Business Phone

**General Retirement Plan – Consent of Spouse to Designation of Beneficiary**

Employee's Name

Employee's Social Security Number

As the spouse of the employee named above, I do hereby consent to the designation by my spouse of a beneficiary other than myself to receive, upon my spouse's death, my spouse's accumulated contributions with interest under the Plan and acknowledge that such amounts will not be paid to me. I further certify that I understand that such assets would be payable to me if I had not signed the CONSENT and that I have voluntarily executed this CONSENT to designation of a beneficiary other than myself.

Signature _____

Date _____

**NOTARY PUBLIC:**

Signed and sealed before me this

day of _____, _____.

Notary Public Signature _____

4837    NESC
May 28, 1997

Page 2 of 2

**APPELLANT'S BRIEF** IN SUPPORT OF SHOW CAUSE ORDER AND MOTION FOR HEARING IN SUPPORT OF MOTION FOR ORDER FOR TELEPHONIC HEARING

Dkt 94 and Dkt 95 Docket and Evidence on provided by Appellant. Disability Retirement under the General Retirement Plan for Salaried Employees 38-0549190 3=Digit 002, Total Benefit Rule and ten years of service or credit service.

Defendant's purposely altered Ms. Grech's retirement plan GRP-002, attempt to stop the payment of the TBR – Total Benefit Rule and Disability Benefits Ms. Grech had already earned.

•       May 16, 2016, On November 6, 2016, and Rule 5, January 18, 2018, Ford Motor Company and Unicare and Ms. Lori Costew refused to answer the ERISA Beneficiary rights and Appeals, as well as, Rule 5, Redemption Order Filing for their violation of Michigan Court Orders.

OPEN ISSUES AND DISCUSSION:

On August 15, 2022, The Honorable Judge Mark A. Goldsmith issued Court Order (Dk7 157) to Plaintiff's Motion for Immediate Injunctive Relief (Dkt 156). Judge Goldsmith, "***Grech must file a response showing why her motion should not be struck, given that this case is closed***."

To overcome rule 50a, for good cause a Plaintiff-Appellant must show "good cause" to overturn the original ruling.  (1) Corruption and Conflicts of Interest in the Federal and Appeals Case, Judicial and Attorney Grievance Investigations. (2) Failure of Due Process and Manifestation of Injustice. (3) May 5, 2022, Pension Benefit Guarantee Corporation Admirative Record on Appellant's Benefits Record – FOIA. In Addition, the Jurisdiction of this Case is in question.

, in accordance with previous precedence and required standards set by Ford Motor Company, contacted Ford Motor Company Diversity Manager Ms. Lori Costew who is Ford Motor Company's Agent of Legal Service and the responsible party for blocking Ms. Grech from having access to all her Ford Motor Company benefits and account services. Ford Motor Company did not respond to "*Plaintiff's Motion for Immediate Injunctive Relief*" (Dkt 156), or any of the last eighteen years of Plaintiff's Civil Rights, Discovery, ERISA or Benefits Plan Claims and Appeals and Proper Legal filings for Legal Plan Documents, Summary Plan Descriptions, Bullard Plawecki Employee Right to know Act requests, or the Yearly 5500 Reports that represent those Trust Plans to coincide with the application and administration of Plaintiff's fully vested Total Compensation and Pension rights; including the forced Disability Retirement under the Ford Motor Company General Retirement Plan for Salaried Employees on February 1, 2008, where Ford Motor Company purposely altered Ms. Grech's vested employment record and changed her benefits, employment class and salary compensation package to a completely different Pension Plan, leaving the false information and causing complete devastation in Ms. Grech's credit, social security, Medicare, employment history, medical group policies and medical history, dental records, driver's license and every aspect of her life, health and mental wellbeing. Ford Motor Company was aware they could not simply alter Ms. Grech's work history and vested benefits plan, as she had contributed to these plans, paid taxes and those records were used by State and Federal data systems. Yet, Ford Motor Company altered, manipulated and purposely violated ERISA and vested Trust Plans of employees by changing the Plans employees were vested in, which is clearly outlined in their Administrative Record forced through in this Court Case, (Dkt 74) and private medical records (Dkt 75) without Ms. Grech's ability to Object, review or remove them before they were added to the Court Docket. These false records, both (Dkt 74) and (Dkt 75), were orchestrated by the Eastern District of Michigan Federal Court, U.S. EEOC, MDCR and Department of Labor, all pushing Tort Reform through ICLE, all having conflicts of Interest and all training the same seminars on the topics of Alternative Dispute Resolution and Tort Reform. Ford Motor Company purposely altered Ms. Grech's Total Compensation, Pension Trust and vesting rights, changing her fully vested benefits from the General Retirement Plan (GRP-002), **Attachment 1, Pages (1-4)** to the Ford, Retirement Plan (FRP-003).

Ford Motor Company Administrative Record where Ford falsely and fraudulently used an outdated Corporate ID of "KCASE", while knowing the old Corporate ID was from a time the Appellant had not been married and the old Corporate ID was not updated with a correct Total Compenstion Package. Ford Motor Company never explained to Ms. Grech why they would need to use and old, outdated and severely maniuplated Corporate ID: "KCASE", when that Corporate ID: "KCASE" was not her legal name, have her correct Salary Compensation Package, Pension and Retirement Account, Medical Group, or any of the Benefits or Managment History associated with it. In fact, the entire Corporate ID: "KCASE" record was incorrect and even listed: Raises in years Ms. Grech did not receive, managers Ms. Grech did not work for, listed job classifications Ms. Grech did not have and work locations / payroll lcoations Ms. Grech never work at. Ford left this incorrect Corporate ID: "KCASE" while forcing Ms. Grech into Disability Retirement. Ford knew the fraudulent record would create a false retirement benefits file, but refused to correc it. Ford's actions created two rcords, two sets of OHSA / MiOSHIA work restriction files, two Social Security Records, two files sent to Equixfax Talx The Work Number, Two data records to MetLife, Two data files to Mutual of Omaha / United of Omaha, Two records to the U.S. IRS and Treasury, two different sets to the medical industry and Department of Labor. Ford knew they had done this, causing havoc, destruction and mahem in Ms. Grech's life, health, financial and every aspect of wellbeing, but refused to correct the dual sets of records they created and were falsey sending.

Ford MOtor Company, WellPoint Unciare, the Law Firm of Kienbaum Hardy Viviano Pelton Forrest, KNEW they had created dual records, that Appellant's name was Kimberly Grech, NOT Kimberly Case, but sent false and fraudulent records and Corporate ID of "KCASE" with a false employment file. The Ed.Mi. Federal Court falsely alleged Ms. Grech did not respond to Defendant's Dkt 59 or 74, and Magistrate Hluchaniuk was so bias and prejudice against Pro Se diabled litigants,he harassed, called out petty clerical mistakes Pro Se are typicaclly excused from, allowed so-called Independant Medical Evaluation from forced reviews demanded by Ford, otherwise Ms. Grech's disability benefits would be cancelled, to be filed on the Docket without a Motion to Seal, Ms. Grech's ability to Object and an Order of the Courtk; and falsely alleged Appellant did not file a response or Exhibits to Defendant's false filing of ERISA violations Dkt 59 or 74, while the Court refused to properly Docket Ms. Grech's Reply Brief and Exhibits: Appellant's Dkt 89, Dkt 90 and Dkt 92, Dkt 95. and Dkt 142, Dkt 151,

Appellant Submits CM/ECF - U.S. District Court:mied Civil Docket Case # 5:08-cv-10729-MAG-KGA

for review of ADA investigation, abuse and corruption, Attchament III - Pages:

Appellant's Corporate ID was: KGRECH2. The Defendant created and used a false employment data record Corporate ID: "KCASE" to push this false employment record through State and Federal Data Systems to deny Appellant's fully vested Disability Pension benefits, but then false and fraudulently collected Social Security Overpayment calculated what would have been benefits paid under the Corporate ID: KGRECH2. Payments the Defendant never paid. The Defendant abused individuals with disability with immunity in every aspect of their lives while

the State of Michigan, Region5 and Federal Court and Civil Rights refused to investigate the violations. Ford Motor Company and Region 5, using MHIT, MDIT, MHIN and other Data Systems, created a false medical and psychological profile to use against her, pushing that onto the internet and into State and Federal data systems. Their actions were purposeful, capricious, retaliatory and used and abused their positions of power in the State of Michigan, on the State Bar, Federal Bar and other legal agencies."

**FEDERAL COURT APPEAL AND SHOW CAUSE:**

Appellant resubmits her Amended Complaint Dkt 26 with Correction Dkt 26, August 28, 2008 and September 9, 2008, The Defendant never filed a reponse, never engaged in any aspect of Discovery, adn the Eastern District of Michigan Federal Court refused Due Process. The EdMi was engaging in their own form of law resolution through the Institute of Continual Legal Education, "ICLE" and pushing Alternative Dispute Resolution "ADR". Individuals involvoed in ADR decided the outcome of litigaation without the input of the litigants violating their Civil, Constitutional, Employment, Disability and Human Rights. This group of connected and bias, prejudice and corrupt individuals attempted to force Ms. Grech, to attend a no notice Deposition where she was refused appointed counsel and the required Discovery Hearing. Judge John Corbett O'Meara attempted to force Ms. Grech, a disabled, domestic violence survivor, Pro Se Litigant to attend an impromtu deposition after he had called Judge Hood's chambers and had the appointed counsel from the Pro Bono Committee removed. These ADA and Civil Rights violation were not investigation by the Sixth Circuit Court of Appeals and instead covered-up along with the multitude of abuse, docket tampering, transcript manipulations and conflict of interest and abuses that continued to occur by the Clerks, Magistrate, Judge and Defense counsel.

Federal Court Document (Dkt 10) (Dkt 165), (Dkt 93), in its entirety, "*Plaintiff's Response To Defendant's Motion for Final Judgement on Administrative Record* (Dkt 74 & Dkt 75) and Reinstates a Motion for Immediate Injunctive Relief and Motion for Protection Order, (Dkt 156) citing Abuse of Power, refusal of Due Process, Manifestation of Injustice, intimidation, harassment, defamation, Bias, Prejudice and Abuse of Discretion,threats, cover-up and punitive damages and retaliation in the Case.

The Defedant and Federal Court used shaming, defaming and canceling Ms. Grech by pushing false and fraudulent dockets to the internet from the EdMi Federal Court onto Pacer through the Government Printing Office. When the GPO archeived and was replced, the old Court Order from Judge O'Meara dn Magistrate Hluchaniuk also archieved and no longer appeared on the internet. **The Defendant and EdMi Federal Court called the GPO and ordered the files to be brought out of archieve** and to be pushed back onto the internet, causing more harm, harassment and retalation. The Federal Court and Defendants actions were capricious, malicious, defaming and destructive to Ms. Grech's life, health, wellbeing and every aspect of her life.

These actions demonstrate a coordinated effort between the Eastern District of Michigan Federal Court, Sixth Circuit Court of Appeals, Michigan State Bar, Michigan Department of Civil Rights Daniel Levy, Michigan Executive Branch, the Law Firm KVHPF, The Defendants Ford Motor

Company, Department of Labor, Region5, and Michigan Civil Rights Groups to in issuing Favors, Bias, Privileges and targeting against individuals with Disabilities, Domestic Violence Survirors and specificallyMs. Grech, an Individuals with Disabilities and Domestic Violence Survivor to prevent ERISA, ADA, Elliott Larsen Civil Rights Act, FMLA, Continuing Action, and the corruption brought forward by these Large Corporations and Insurance Companies that violation privacy and protections rights of protected individuals and abuse power granted to them by state and federal agencies.

Conflicts of Interest in this Case and between the Court and the Defendant's. Plaintiff Supplies (Dkt 77), (Dkt 82) and (Dk136) and (Dkt138)

Plaintiff filed Dkt 156, after more than eighteen years of harassment, retaliation and abuse of power by the Defendant, their attorneys, representatives, insurers, fiduciaries, and other clients they also represented and had open conflicts, bias and received preludial and preferential treatment given by the State of Michigan and Federal Court, Governor of Michigan and President of the United State of America.

The May 5, 2022, Administrative Record release by the Pension Benefits Guarantee Commission, as well as, the abuse of power, ongoing harassment and Manifestation of Injustice and failure of Due Proces in this Case meets the bar for the Sixth Circuit Court of Appeals to review overturn its earlier Appeal 10-2020 ruling, a ruling issued out of the Courts refusal to issue Mediation, properly review this Case or the Judicial Complaints and Conflicts of Interest between the Defense and Judges, and abuse of a disabled litigant.

 issue an Immediate Injunctive Appellant's (Dkt 156), Immediate Motion for Injunctive Relief and Review Defendant Administrative Record Dkt 56 and Dkt 74 and (**Dkt75**) Defendant filing Plaintiff – Appellant's medical records without Motion for Order by the Court or Appellant's ability to Review, Object or Strike those records from the Docket. These actions violate FRCP and Appellant's privacy rights.

**Attachment I – Page 1**



To: Participants or Beneficiaries

2007 Summary Annual Reports — Company Benefit Plans

As required by the Employee Retirement Income Security Act of 1974 (ERISA), the Company is providing the following Summary Annual Reports to all participants in and beneficiaries of the General Retirement Plan; Savings and Stock Investment Plan; Life and Disability Plans; Dental Plan; Medical Plan; Vision Care Plan; Long-Term Care Insurance Plan; and the Legal Plan.

The plans are applicable to active participants, retired participants, participants separated from employment and entitled to future benefits, and with respect to the General Retirement Plan, beneficiaries receiving pension benefits.

Generally, Summary Annual Reports are required for those plans providing benefits through a trust fund or insurance. The following reports are condensations of more extensive reports that the Company prepares and submits annually to the U.S. Department of Labor. Receipt of this document does not imply that you are covered by the plans it describes; eligibility is determined by the provisions of each plan. If there is a conflict between this document and the Plan Documents, the Plan Documents will control. **No action on your part is required unless you want to receive a copy of the full report.**

December 15, 2008

## GENERAL RETIREMENT PLAN

This is a summary of the annual report for the Ford Motor Company General Retirement Plan, Employer Identification Number 38-0549190, Plan Number 002, for the period January 1, 2007 through December 31, 2007. The annual report has been filed with the Employee Benefits Security Administration, as required under the Employee Retirement Income Security Act of 1974 (ERISA).

### Basic Financial Statement

Benefits under the plan are provided primarily through a trust funded by Company and employee contributions, and partly through a paid-up insurance contract purchased for certain employees prior to March 1, 1950. Plan expenses were $1,859,898,303. These expenses included $52,015,460 in administrative expenses and $1,807,882,843 in benefits paid to participants and beneficiaries. A total of 124,810 persons were participants in or beneficiaries of the plan at the end of the plan year, although not all of these persons had yet earned the right to receive benefits.

The value of plan assets, after subtracting liabilities of the plan, was $20,709,301,135 as of December 31, 2007, compared to $20,297,792,319 as of January 1, 2007. During the plan year, the plan experienced an increase in its net assets of $411,508,816. This increase includes unrealized appreciation or depreciation in the value of plan assets; that is, the difference between the value of the plan's assets at the end of the year and the value of the assets at the beginning of the year or the cost of assets acquired during the year. The plan had total income of $2,271,407,119, including employee contributions of $30,560,351 and earnings from investments of $2,240,846,768.

### Minimum Funding Standards

An actuary's statement shows that enough money was contributed to the plan to keep it funded in accordance with the minimum funding standards of ERISA.

### Your Rights to Additional Information

You have the right to receive a copy of the full annual report, or any part thereof, on request. The items listed below are included in that report:

1. accountant's report;
2. financial information and information on payments to service providers;
3. assets held for investment;
4. transactions in excess of 5 percent of plan assets;
5. information regarding any common or collective trusts, pooled separate accounts, master trusts or 103-12 investment entities in which the plan participates; and
6. actuarial information regarding the funding of the plan.

To obtain a copy of the full annual report, or any part thereof, write or call Ford Motor Company, who is the plan administrator, National Employee Services Center, Attn: Summary Annual Reports, P.O. Box 6214, Dearborn, Michigan 48121-6214, telephone number 1-800-248-4444. The charge to cover copying costs will be $4.80 for the full annual report, or 10¢ per page for any part thereof.

You also have the right to receive from the plan administrator, on request and at no charge, a statement of the assets and liabilities of the plan and accompanying notes, or a statement of income and expenses of the plan and accompanying notes, or both. If you request a copy of the full annual report from the plan administrator, these two statements and accompanying notes will be included as part of that report. The charge to cover copying costs given above does not include a charge for the copying of these portions of the report because these portions are furnished without charge.

You also have the legally protected right to examine the annual report at the main office of the plan (Ford Motor Company, National Employee Services Center, 15041 Commerce Drive S., Suite 431, Dearborn, Michigan 48120-1295), at your Personnel Office within ten days of your request, and at the U.S. Department of Labor in Washington, D.C., or to obtain a copy from the U.S. Department of Labor upon payment of copying costs. Requests to the Department should be addressed to: Public Disclosure Room, Room N-1513, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

C-SL-C125

**Attachment I – Page 2**

## SAVINGS AND STOCK INVESTMENT PLAN FOR SALARIED EMPLOYEES

This is a summary of the annual reports of the Ford Motor Company Savings and Stock Investment Plan for Salaried Employees, EIN 38-0549190, Plan Number 010 for the period January 1, 2007 through December 31, 2007. The annual report has been filed with the Employee Benefits Security Administration, as required under the Employee Retirement Income Security Act of 1974 (ERISA).

### Basic Financial Statement

Benefits under the plan are provided through a trust fund. Plan expenses were $1,621,252,548. These expenses included $973,887 in administrative expenses, $1,619,728,507 in benefits paid to participants and beneficiaries, and $550,154 in other expenses. A total of 59,389 persons were participants in or beneficiaries of the plan at the end of the plan year, although not all of these persons had yet earned the right to receive benefits.

The value of plan assets, after subtracting liabilities of the plan, was $7,210,014,119 as of December 31, 2007, compared to $8,136,459,156 as of January 1, 2007. During the plan year, the plan experienced a decrease in its net assets of $926,445,037. This decrease includes unrealized appreciation and depreciation in the value of plan assets; that is the difference between the value of the plan's assets at the end of the year and the value of assets at the beginning of the year or the cost of assets acquired during the year. The plan had a total income of $694,807,511, including employer contributions of $36,147,034, employee contributions of $258,244,705 and earnings from investments of $400,415,772.

### Your Right to Additional Information

You have the right to receive a copy of the full annual report, or any part thereof, on request. The items listed below are included in that report:

1. an accountant's report;
2. financial information and information on payments to service providers;
3. assets held for investment; and
4. information regarding any common or collective trusts, pooled separate accounts, master trusts or 103-12 investment entities in which the plan participates.

To obtain a copy of the full annual report, or any part thereof, write or call Ford Motor Company, who is the plan administrator, National Employee Services Center, Attn: Summary Annual Reports, P.O. Box 6214, Dearborn, Michigan 48121-6214, telephone number 1-800-248-4444. The charge to cover copying costs will be $1.40 for the full annual report, or 10¢ per page for any part thereof.

You also have the right to receive from the plan administrator, on request and at no charge, a statement of the assets and liabilities of the plan and accompanying notes, or a statement of the income and expenses of the plan and accompanying notes, or both. If you request a copy of the full annual report from the plan administrator, these two statements and accompanying notes will be included as part of that report. The charge to cover copying costs given above does not include a charge for the copying of these portions of the report because these portions are furnished without charge.

You also have the legally protected right to examine the annual report at the main office of the plan (Ford Motor Company, National Employee Services Center, 15041

Commerce Drive S., Suite 431, Dearborn, Michigan 48120-1295), at your Personnel Office within ten days of your request, and at the U.S. Department of Labor in Washington, D.C., or to obtain a copy from the U.S. Department of Labor upon payment of copying costs. Requests to the Department should be addressed to Public Disclosure Room, Room N-1513, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

## LIFE AND DISABILITY PLAN

This is a summary of the annual report for the Ford Motor Company Life and Disability Plan, Employer Identification Number 38-0549190, Plan Number 550, for the period January 1, 2007 through December 31, 2007. The plan provides life and accidental death and dismemberment insurance, supplemental survivor income benefits and disability benefits for certain active employees and retirees. The annual report has been filed with the Employee Benefits Security Administration, as required under the Employee Retirement Income Security Act of 1974 (ERISA).

Ford Motor Company has committed itself to pay primary and long-term disability claims incurred under the terms of the plan.

### Insurance Information

The plan has contracts with the following providers to pay certain claims incurred under the terms of the plan:

1. Mutual of Omaha Insurance Company
2. Metropolitan Life Insurance Company
3. UniCare Life and Health Insurance Company

The total of premiums paid for the plan year ending December 31, 2007 was $80,373,196.

Because Mutual of Omaha Insurance Company's, Metropolitan Life Insurance Company's and UniCare Life and Health Insurance Company's contracts are so-called "experience-rated" contract, the premium costs are affected by, among other things, the number and size of claims. Of the total insurance premiums paid for the plan year ending December 31, 2007, the premiums paid under such an "experience-rated" contracts were $78,495,692 and the total of all benefit claims paid under the "experience-rated" contract during the plan year was $88,321,219.

### Your Rights to Additional Information

You have the right to receive a copy of the full annual report, or any part thereof, on request. The items listed below are included in that report:

1. financial information and information on payments to service providers; and
2. insurance information including sales commissions paid by insurance carriers.

To obtain a copy of the full annual report, or any part thereof, write or call Ford Motor Company, who is the plan administrator, National Employee Services Center, Attn: Summary Annual Reports, P.O. Box 6214, Dearborn, Michigan 48121-6214, telephone number 1-800-248-4444. The charge to cover copying costs will be $1.60 for the full annual report, or 10¢ per page for any part thereof.

You also have the legally protected right to examine the annual report at the main office of the plan (Ford Motor Company, National Employee Services Center, 15041 Commerce Drive S., Suite 431, Dearborn, Michigan 48120-1295), at your Personnel Office within ten days of your

**Attachment I – Page 3**

request, and at the U.S. Department of Labor in Washington, D.C., or to obtain a copy from the U.S. Department of Labor upon payment of copying costs. Requests to the Department should be addressed to: Public Disclosure Room, Room N-1513, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

## LIFE AND ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PLAN FOR LEADERSHIP LEVELS 1-4 EMPLOYEES

This is a summary of the annual report for the Ford Motor Company Life and Disability Insurance Plan for Leadership Levels 1-4 Employees, Employer Identification Number 38-0549190, Plan Number 551, for the period January 1, 2007 through December 31, 2007. The plan provides life and accidental death and dismemberment insurance and supplemental survivor income benefits for certain active and retired Leadership Levels 1-4 employees. The annual report has been filed with the Employee Benefits Security Administration, as required under the Employee Retirement Income Security Act of 1974 (ERISA).

### Insurance Information

The plan has contracts with the following providers to pay all claims incurred under the terms of the plan:

1. Mutual of Omaha Insurance Company
2. Metropolitan Life Insurance Company

The total of premiums paid for the plan year ending December 31, 2007 was $20,879,600.

Because the Mutual of Omaha Insurance Company and Metropolitan Life Insurance Company contracts are so-called "experience-rated" contracts, the premium costs are affected by, among other things, the number and size of claims. Of the total insurance premiums paid for the plan year ending December 31, 2007, the premiums paid under such an "experience-rated" contracts were $20,587,489 and the total of all benefit claims paid under this "experience-rated" contract during the plan year was $19,741,718.

### Your Rights to Additional Information

You have the right to receive a copy of the full annual report, or any part thereof, on request. The items listed below are included in that report:

1. financial information and information on payments to service providers; and
2. insurance information including sales commissions paid by insurance carriers.

To obtain a copy of the full annual report, or any part thereof, write or call Ford Motor Company, who is the plan administrator, National Employee Services Center, Attn: Summary Annual Reports, P.O. Box 6214, Dearborn, Michigan 48121-6214, telephone number 1-800-248-4444. The charge to cover copying costs will be $1.20 for the full annual report, or 10¢ per page for any part thereof.

You also have the legally protected right to examine the annual report at the main office of the plan (Ford Motor Company, National Employee Services Center, 15041 Commerce Drive S., Suite 431, Dearborn, Michigan 48120-1295), at your Personnel Office within ten days of your request, and at the U.S. Department of Labor in Washington, D.C., or to obtain a copy from the U.S. Department of Labor upon payment of copying costs.

Requests to the Department should be addressed to: Public Disclosure Room, Room N-1513, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

## DENTAL PLAN

This is a summary of the annual report of the Ford Motor Company Dental Plan, Employer Identification Number 38-0549190, Plan Number 562, for the period June 1, 2007 through May 31, 2008. The plan provides certain dental care benefits for active salaried employees, retirees, certain surviving spouses and their eligible dependents. The annual report has been filed with the Employee Benefits Security Administration, as required under the Employee Retirement Income Security Act of 1974 (ERISA).

Ford Motor Company has committed itself to pay certain dental care claims incurred under the terms of the plan.

### Insurance Information

The plan has contracts with the following providers to provide treatment and services or pay certain claims incurred under the terms of the plan:

- International Healthcare Services
- Group Dental Health Administrators, Inc.
- Cigna International
- Midwestern Dental
- United Concordia

The total of premiums paid for the plan year ending May 31, 2008 was $5,570,797.

### Your Rights to Additional Information

You have the right to receive a copy of the full annual report, or any part thereof, on request. The items listed below are included in that report:

1. financial information and information on payments to service providers; and
2. insurance information including sales commissions paid by insurance carriers.

To obtain a copy of the full annual report, or any part thereof, write or call Ford Motor Company, who is the plan administrator, National Employee Services Center, Attn: Summary Annual Reports, P.O. Box 6214, Dearborn, Michigan 48121-6214, telephone number 1-800-248-4444. The charge to cover copying costs will be $2.30 for the full annual report, or 10¢ per page for any part thereof.

You also have the legally protected right to examine the annual report at the main office of the plan (Ford Motor Company, National Employee Services Center, 15041 Commerce Drive S., Suite 431, Dearborn, Michigan 48120-1295), at your Personnel Office within ten days of your request, and at the U.S. Department of Labor in Washington, D.C., or to obtain a copy from the U.S. Department of Labor upon payment of copying costs. Requests to the Department should be addressed to: Public Disclosure Room, Room N-1513, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

## MEDICAL PLAN

This is a summary of the annual report of the Ford Motor Company Medical Plan, Employer Identification Number 38-0549190, Plan Number 560, for the period January 1,

C-SL-C123

**Attachment I, Page 4**

2007 through December 31, 2007. The plan provides certain health care benefits for active salaried employees, retirees, certain surviving spouses and their eligible dependents. The annual report has been filed with the Employee Benefits Security Administration, as required under the Employee Retirement Income Security Act of 1974 (ERISA).

Ford Motor Company has committed itself to pay certain health care claims incurred under the terms of the plan.

### Insurance Information

The plan has contracts with the following providers to provide treatment and services or pay certain claims incurred under the terms of the plan.

Salary Health Care
- BCBS
- Blue Care Network
- Blue Choice
- CareChoices
- Cigna Health Care
- Exclusive Care
- Group Health
- Health Alliance Plan
- Health Partners
- Health Plan of Nevada
- Humana
- Kaiser
- M-Care
- Optima
- Pacificare
- Paramount
- Univera/Health Care Plan

The total of premiums paid for the plan year ending December 31, 2007 was $258,187,320.

### Your Rights to Additional Information

You have the right to receive a copy of the full annual report, or any part thereof, on request. The items listed below are included in that report:
1. financial information and information on payments to service providers; and
2. insurance information including sales commissions paid by insurance carriers.

To obtain a copy of the full annual report, or any part thereof, write or call Ford Motor Company, who is the plan administrator, National Employee Services Center, Attn: Summary Annual Reports, P.O. Box 6214, Dearborn, Michigan 48121-6214, telephone number 1-800-248-4444. The charge to cover copying costs will be $10.00 for the full annual report, or 10¢ per page for any part thereof.

You also have the legally protected right to examine the annual report at the main office of the plan (Ford Motor Company, National Employee Services Center, 15041 Commerce Drive S., Suite 431, Dearborn, Michigan 48120-1295), at your Personnel Office within ten days of your request, and at the U.S. Department of Labor in Washington, D.C., or to obtain a copy from the U.S. Department of Labor upon payment of copying costs. Requests to the Department should be addressed to: Public Disclosure Room, Room N-1513, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

## VISION CARE PLAN

This is a summary of the annual report of the Ford Motor Company Vision Care Plan. Employer Identification Number 38-0549190, Plan Number 547, for the period June 1, 2007 through May 31, 2008. The plan provides certain vision care benefits for active salaried employees and their eligible dependents. The annual report has been filed with the Employee Benefits Security Administration, as required under the Employee Retirement Income Security Act of 1974 (ERISA).

### Insurance Information

The plan has a contract with Heritage Visions Plans, Inc. to provide services and to pay all claims incurred under the terms of the plan. The total of premiums paid for the plan year ending May 31, 2008 was $2,811,470.

### Your Rights to Additional Information

You have the right to receive a copy of the full annual report, or any part thereof, on request. The items listed below are included in that report:
1. financial information and information on payments to service providers; and
2. insurance information including sales commissions paid by insurance carriers.

To obtain a copy of the full annual report, or any part thereof, write or call Ford Motor Company, who is the plan administrator, National Employee Services Center, Attn: Summary Annual Reports, P.O. Box 6214, Dearborn, Michigan 48121-6214, telephone number 1-800-248-4444. The charge to cover copying costs will be $.70 for the full annual report, or 10¢ per page for any part thereof.

You also have the legally protected right to examine the annual report at the main office of the plan (Ford Motor Company, National Employee Services Center, 15041 Commerce Drive S., Suite 431, Dearborn, Michigan 48120-1295), at your Personnel Office within ten days of your request, and at the U.S. Department of Labor in Washington, D.C., or to obtain a copy from the U.S. Department of Labor upon payment of copying costs. Requests to the Department should be addressed to: Public Disclosure Room, Room N-1513, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

## LONG-TERM CARE INSURANCE PLAN

This is a summary of the annual report for the Ford Motor Company Long-Term Care Insurance Plan. Employer Identification Number 38-0549190, Plan Number 549, for the period June 1, 2007 through May 31, 2008. The plan provides Long-Term Care Insurance for certain active employees, certain retirees and dependents. The annual report has been filed with the Employee Benefits Security Administration, as required under the Employee Retirement Income Security Act of 1974 (ERISA).

### Insurance Information

The plan has a contract with John Hancock Life Insurance Company to pay all long-term care claims incurred under the terms of the plan. The total of premiums paid for the plan year ending May 31, 2008 was $5,394,130.

Michigan Ethics Complaint



**HARDY & PELTON**, P.L.C.
ATTORNEYS AND COUNSELORS

Margaret Carroll Alli
Julia Turner Baumhart
Jay C. Boger
Robert Bruce Brown
Jonathan E. Duckworth
William E. Forrest III
Elizabeth Hardy
Thomas G. Kienbaum
Sonja Lengnick
Shannon V. Loverich
Noel D. Massie
Theodore R. Opperwall
Eric J. Pelton
Marlo Johnson Roebuck
Robert Q. Romanelli

280 North Old Woodward Avenue
Suite 400
Birmingham, Michigan 48009
Phone (248) 645-0000
Fax (248) 645-1385

211 West Fort Street, Suite 5⬚
Detroit, Michigan 482⬚
Phone (313) 961-39⬚
Fax (313) 961-39⬚

Patricia J. Boy⬚
Christina D. Hill Johnston⬚
Victor G. Marrocc⬚
Of Couns⬚

August 16, 2007

Ruthann Stevens
Senior Associate Counsel
State of Michigan, Attorney Grievance Commission
Marquette Building
243 W. Congress, Suite 256
Detroit, Michigan 48226-3259

Re:    Kimberly Grech as to Jennifer A. Zinn
        File No. 1787/07

Dear Ms. Stevens:

I am responding to the letter you sent Ms. Jennifer Zinn at Ford Motor Company. Ms. Zinn was admitted to the practice of law in the State of Michigan in 1988 and has been an attorney with Ford's Office of the General Counsel since 1999. Her area of expertise is employment litigation and counseling. Prior to joining Ford, Ms. Zinn was a partner at Dickinson Wright, where she practiced law as an employment specialist for nearly 11 years. I represent Ms. Zinn in connection with the grievance which was filed by Kimberly Grech, an employee of Ford Motor Company, on July 5, 2007.

In her grievance, Ms. Zinn states that Ms. Zinn participated in manipulating her employment records, used intimidation practices to coerce and scare employees into not reporting their issues to outside organizations, and made a direct threat as part of a mediation process with the MDCR to cancel Ms. Grech's healthcare benefits in retaliation for her refusal to close her charges against Ford.

Ms. Zinn emphatically denies all of these charges. In no way has she manipulated Ms. Grech's employment records or directed others to do so. In fact, she has no idea what alterations or alleged manipulations Ms. Grech claims occurred to her records. Further, at no time has Ms. Zinn attempted to intimidate or coerce Ms. Grech or any other employee into not reporting civil rights claims to outside administrative